1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

United States of America,               )
                                        )     No.    CR-07-50154 TUC-DCB (JM)
        Plaintiff,                      )
                                        )     **REPORT AND RECOMMENDATION**
        v.                              )
                                        )
Cristobal Gonzalez-Reyes,               )
                                        )
        Defendant.                      )
_____ )

        Pursuant to the District Judge's order dated November 29, 2007, Defendant's evidentiary hearing on a Petition to Revoke Supervised Release came on for hearing before the Magistrate Judge on April 15, 2008.[1]  Defendant was present and assisted by counsel. The Government presented two witnesses, U.S. Probation Officer Assistant Monica Esquivel from the Tucson office and U.S. Probation Officer Assistant Roger Perez, from the Corpus Christi division.[2]  The Defendant testified on his own behalf.  Having considered the matter, the Court issues its Report and Recommendation and recommends that the District Court grant the Government's Petition to Revoke Defendant's Term of Supervised Release.

**I.    PROCEDURAL HISTORY**

        On June 8, 2006, following a conviction in the Southern District of Texas for illegal reentry after deportation in violation of 8 U.S.C. § 1326 (b)(1),  Defendant was sentenced to 21 months in prison and 36 months of supervised release. Defendant's conditions of supervision included that he "not commit another federal, state, or local crime." Defendant

_____

        [1]A transcript of this proceeding was ordered and prepared.  (Docket No. 17).

        [2]Mr. Perez testified telephonically.

was released from prison and deported to Mexico on August 8, 2007.  His 36 month term of supervised release began on that date.

On August 28, 2007, Defendant was found in McNeal, Arizona without legal authorization to reenter and was again charged with illegal reentry after deportation. (CR 07-01674 TUC-DCB-JM.).  On November 16, 2007, he pled guilty to a violation of 8 U.S.C. § 1326 (b)(2) and sentencing was set for January 30, 2008.  In the interim, on November 26, 2007, the Government filed a Petition to Revoke Supervised Release.  (CR-07-50154 TUC-DCB-JM).

On December 12, 2007, the date scheduled for the evidentiary hearing on the supervised release petition, upon the advice of the probation officer preparing the Presentence Report in CR 07-01674 TUC-DCB-JM, defense counsel requested that the Defendant be evaluated for mental competency.  The court granted the motion and stayed both the evidentiary hearing in CR-07-50154 TUC-DCB-JM and the sentencing hearing in CR 07-01674 TUC-DCB-JM.

Following the evaluation period, the medical expert filed a Federal Competency Evaluation Report which concluded that the Defendant was mentally competent to proceed. A status conference was conducted on March 5, 2008.  The Defendant was present and represented by counsel. Neither the Government nor defense counsel objected to the medical findings.  The Court ruled that the Defendant was mentally competent in that he was able to understand the proceedings against him and assist properly in his defense.  Sentencing was scheduled in CR 07-01674 TUC-DCB-JM for May 15, 2008.  The evidentiary hearing in CR-07-50154 TUC-DCB-JM was conducted on April 15, 2008.

The issues presented at the evidentiary hearing were whether the Defendant was adequately notified of his conditions of supervised release and whether his mental incapacities rendered him incapable of forming the intent to violate his conditions.

1    **I.      FINDINGS OF FACT**

2           **A.      TESTIMONY OF OFFICER PEREZ**

3           U.S. Probation Officer Assistant Roger Perez from the Corpus Christi division in

4    Texas was assigned to prepare Defendant's Presentence Investigation Report.  He was

5    present at the sentencing hearing and heard Chief District Judge Head admonish the

6    Defendant, through a Spanish speaking interpreter, not to commit another federal, state or

7    local crime.

8           Immediately after the sentencing hearing, Officer Perez had the Defendant sign

9    written conditions of supervised release.  Paragraph two of those conditions advised the

10   Defendant not to commit a crime while on supervised release.  The Defendant signed the

11   official court record document that is in English but was given a Spanish version to take with

12   him.  Additionally, Officer Perez, who is a native Spanish speaker, read the document to the

13   Defendant, including the condition that he not commit another federal, state or local crime.

14   At no time did the Defendant indicate to Officer Perez that he did not understand any of the

15   conditions or that he was confused by any of them.

16          **B.      TESTIMONY OF DEFENDANT**

17          The Defendant testified that during his sentencing hearing, he may have heard the

18   judge say the words "supervised release" but he did not capture the meaning or understand

19   what the words meant.  Additionally, because he has difficulty hearing, he was not able to

20   hear or understand the interpreter properly. He was too embarrassed, however, to voice his

21   complaints in court.

22          After the sentencing hearing, Defendant states that the probation officer set out several

23   papers for him to sign and asked him if he understood.  He did not want to draw things out

24   too long so he said that he did understand and just signed the papers.  In reality, he did not

25   know what the papers said. The Defendant acknowledged that the probation officer gave him

26   a copy of the conditions in Spanish, but because of his limited education (three years of

27   elementary school), he did not know many of the words.

28

- 3 -

1  The Court precluded testimony regarding the Defendant's mental state but allowed
2  defense counsel to make an offer of proof.  If allowed to testify as to his mental deficiencies,
3  Defendant would have testified that he has a history of experiencing phobias when confined
4  to small spaces such as a prison cell.  He also has a history of sexual abuse.  His father had
5  a history of mental instability.  When he was 20 years-old, he suffered a mental heath crisis
6  and had to take pills for five years.  When the Defendant was advised of his conditions of
7  supervised release, he had been in prison for six months suffering from his phobias.  Because
8  of his mental deficiencies, he did not understand what it meant to serve a term of supervised
9  release.

10  ### C.   MEDICAL EXPERT'S CONCLUSIONS

11   Raul J. Rodriguez Sora is the medical doctor specializing in psychiatry who was
12  assigned by the Court to conduct the mental competency evaluation.  Dr. Sora noted in his
13  evaluation that while the Defendant did not understand the concept of a plea bargain, he was
14  able to make a plea regarding his charges.  Additionally, the Defendant was able to assist his
15  attorney in his defense, he was able to participate in a courtroom setting, and he understood
16  the nature and quality of the charges against him.  In the section of the report entitled
17  "Evaluator's Screening Assessment Opinion as to Defendant's State of Mind at the Time of
18  Alleged Offense," Dr.Sora observes that the Defendant understood the nature and quality of
19  wrongfulness of entering another country illegally after being deported.

20  ## II.   CONCLUSIONS OF LAW

21  A court may revoke a defendant's supervised release if it finds by a preponderance of
22  the evidence that the defendant violated a condition of his supervised release. *United States*
23  *v. Musa*, 220 F.3d 1096, 1100 (9th Cir.), *cert. denied*, 531 U.S. 999, 121 S.C. 498, 148
24  LEd.2d 469 (2000); *see also* 18 U.S.C. § 3583(e)(3).

25  ### A.   NOTICE

26  According to the Defendant, neither the oral directions given to him by the district
27  judge at the sentencing hearing, nor the written and oral directions provided to him after the

28  - 4 -

1   hearing by the probation officer, were sufficient to give him adequate notice as to what was

2   expected of him while on supervised release.

3         Pursuant to 18 U.S.C. § 3583 (f), a court shall "direct that the probation officer

4   provide the defendant with a written statement that sets forth all the conditions to which the

5   term of supervised release is subject, and that is *sufficiently clear and specific* to serve as a

6   guide for the defendant's conduct and for such supervision as is required" [emphasis added].

7   Pursuant to 18 U.S.C. § 3603 (1), a probation officer shall "instruct a probationer or a person

8   on supervised release, who is under his supervision, as to the conditions specified by the

9   sentencing court, and provide him with a written statement clearly setting forth all such

10  conditions."

11        A probation officer's failure to provide the statutory written notice of conditions does

12  not automatically invalidate a revocation of release so long as a defendant receives actual

13  notice of his conditions. *United States v. Ortega-Brita*, 311 F.3d 1136, 1138 (9th Cir. 2002).

14  Oral notice by a district court at a sentencing hearing is sufficient. *United States v. Botello-*

15  *Quinones*, 2007 WL 974110 (D.Ariz. 2007).

16        When supervised release conditions prohibit *non*-criminal activities, due process

17  requires that a defendant be given fair warning before he is subjected to a forfeiture of his

18  liberty for engaging in those acts. *United States v. Dane*, 570 F.2d 840, 844 (9th Cir. 1977).

19  However, when violation of a condition entails a new criminal act, actual notice is not

20  required. *Id.*   Knowledge of the criminal law is imputed to a defendant, as is the

21  understanding that violation of the law will lead to revocation of supervised release. *United*

22  *States v. Dane,* 570 F2d 840, 844 (9th Cir. 1978); *United States v. Martinez-Martinez*, 2007

23  WL 1471024 (S.D.Cal. 2007).

24        In this case, since the Defendant committed a new criminal act, actual notice was not

25  required. But even if required, the record is clear that the Defendant was given clear and

26  specific notice that if he committed a new crime, he would violate his conditions of

27  supervised release. The district judge at the sentencing hearing orally advised him of his

28                                            - 5 -

1    conditions as did the probation officer after the sentencing hearing.  The Defendant was even

2    given written notice in Spanish that he could either refer to later himself or have someone

3    else read to him.  At no time did he indicate to either the sentencing judge or to the probation

4    officer that he did not understand what was required of him.  *See United States v. Villalona*,

5    205 Fed.Appx. 291, 2006 WL 3289052 (5th Cir. 2006) where the defendant claimed that the

6    court's admonishment at the sentencing hearing was not actual notice because it was not

7    "clear and specific."  The appellate court upheld the sentencing court noting that the

8    defendant had a court interpreter present and expressed no confusion in response to the

9    district court's explicit imposition of supervised release.

10           **B.    INTENT**

11           Defendant argues that because of his mental infirmities, he not only didn't understand

12   the specific condition he is accused of violating, he didn't even know what it meant to serve

13   a term of supervised release.

14           Rule 32.1of the Federal Rules of Criminal Procedure (Revoking or Modifying

15   Probation or Supervised Release) and Title 18 U.S.C. § 3583 (Inclusion of Term of

16   Supervised Release After Imprisonment) both set out a wide range of factors for a court to

17   consider when imposing sentence for a violation of supervised release.  Neither law provides

18   grounds to contest a revocation based upon diminished mental state or lack of intent.

19   Additionally, case law holds that revocation of supervised release or probation is appropriate

20   regardless of whether a defendant has the willful intent to violate the conditions. *United*

21   *States v. Briggs*, 42 Fed.Appx 898, 2002 WL 1778311 (S.D.Cal. 2002)  *See also United*

22   *States v. Rife*, 835 F.2d 154, (7th Cir. 1987),where the court rejected defendant's argument

23   that because she acted under pressure and duress, she did not form the requisite mental state

24   to commit a crime and thereby violate her conditions of probation.

25           Even if the absence of intent could excuse Defendant's supervised release violation,

26   the Federal Competency Evaluation Report prepared by Dr. Sora amply supports a finding

27   that the Defendant was capable of forming the requisite intent both at the time he was

28                                                   - 6 -

evaluated in March of 2008 and at the time he committed the new offense on August 28, 2007. Because actual notice is not required when violation of a condition entails a new criminal act and because revocation is appropriate regardless of whether a defendant has the willful intent to violate the conditions, the Defendant's mental state at the time he was advised he was on supervised release (June 8, 2006) is irrelevant.

The Magistrate Judge FINDS by a preponderance of the evidence that the Defendant violated his supervised release conditions when he committed the new federal offense of illegal reentry after deportation on August 28, 2007.

## III.   RECOMMENDATION FOR DISPOSITION BY THE DISTRICT COURT

Based on the foregoing and pursuant to 28 U.S.C. § 636 (b) and Local Rule 1.7(d)(2), Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge **RECOMMENDS** that the District Court, after an independent review of the record, revoke the Defendant's term of his supervised release.

Pursuant to 28 U.S.C. § 636 (b), any party may serve and file written objections with the District Court within ten (10) days of being served with a copy of this Report and Recommendation. If the objections are not timely filed they may be deemed waived. If any objections are filed, this action should be designated with the following case number CR-07-50154 TUC-DCB-JM.

DATED this 2nd day of May, 2008.

Jacqueline Marshall
United States Magistrate Judge

- 7 -